This is case number 417-0285, People v. Morger, if that's pronounced correctly, for the appellant is Darren Kimmel, for the appellant is John Zimmerman, Mr. Kimmel, you may proceed, sir. May it please the court? Counsel. I'm Darren Kimmel, on behalf of the Office of the State Appellate Defender. I represent Conrad Morger. Just to be clear, at the top I'm going to stand on the briefs for the first argument, and I'm going to focus today on the second argument, which is the set of challenges to specific probation conditions that were imposed in this case. So turning to that argument, there are limits on the probation conditions that may be imposed on a defendant. Statutory conditions have to be constitutional, and a court's own discretionary conditions have to be both reasonable and related either to the nature of the offense or rehabilitation. So here, first, we have three statutory probation conditions that are unconstitutional, either under the First Amendment or under the Due Process Clause or both. First is condition number 5, which bans all Internet access to social networking websites. We argue this is spatially unconstitutional under the First Amendment, and it's strikingly similar to the recent U.S. Supreme Court case in Packingham v. North Carolina. The main difference between Packingham and this case is that Packingham applied to all convictions, people that completed their sentence and people that were on probation. In this case, it only involves the issue whether Packingham also extends to probation. The Supreme Court didn't reach that issue. What I find difficult to square here is the sweeping language of Packingham that discusses for the first time how important social media is, access to social media is, as a First Amendment right. That cyberspace provides these vast democratic forms of the Internet in general, and social media in particular provides the key place for the exchange of views today in our society. The court notes that 7 in 10 American adults use at least one Internet social networking service. So how do we square that sweeping language of not only the practical importance of social media in our society today for employment, for engaging with members of Congress on Twitter, for using Facebook to read the news, to even go to church online? How do we square those sweeping First Amendment rights with the need to rehabilitate probationers into society? Because there's the twin goals of probation. There's protecting the public and punishing and rehabilitating the probationer. It can't all be punishment. There has to be the rehabilitation as well. And this ban, Condition No. 5, doesn't allow for any exceptions. There's no wiggle room. And so the language of Packingham, we've asserted, should make such an absolute ban on such an important civic right unconstitutional under the First Amendment. Similarly, Conditions No. 6 and 8, there's a lot in No. 8, but in general, among other things, these two conditions bar the access or use of any computer or other Internet-capable device. So that, to me, means a smart phone. Any kind of technology that allows you to access the Internet, you're barred from accessing or using that. And also bars the use of any computer scrub software. But what about the provisions in these conditions that talk about how, for instance, the Internet can use any kind of details as long as it obtains the prior written approval of the probation officer? That's correct, Your Honor. In No. 8, so I just want to delineate, No. 5 that I started off has no exception. That's a mandatory ban. There's no wiggle room for 5. No. 8, Your Honor is correct, does have. It allows discretion to the probation officer to determine in advance what Internet usage is allowed. Now, I would note there's a difference between what the statute provides for. I want to be as clear as I can because there's different sources from the statute or the actual conditions that were imposed. But the statutory language, this is Part B of the statute, which allows discretionary, statutory discretionary conditions that the court can impose. No. 18, E18, which is what condition No. 8 is drawn from, says that you cannot access or use a computer or any other device with Internet capability without the prior written approval of the offender's probation officer, and here's the key language, except in connection with the offender's employment or search for employment, and then again with the prior approval of the offender's probation officer. The court, or McLean County as a policy overall, I'm not sure which, either this case or all cases, has deleted that language, that clause except in connection with the offender's employment or search for employment. So in condition No. 8 that was imposed here, it simply says not access or use a computer or any other device with Internet capability without the prior written approval of the probation officer, semicolons. So they've deleted the softening language that provides some guidance to the probation officer on how to, what to allow and what not to allow. Well, condition No. 5 when talking about social networking and website, isn't that different from just Internet in general? This isn't exactly my strong suit, Mr. Kimball, so I apologize. I'm trying to figure it out. Set up a website where it's more of a personal social thing. Isn't that what we're talking about? But then, Packingham seemed to talk about the former, not the latter. That is, the former about how this is an important means of getting information and what not and learning new stuff as opposed to constitutional right to set up a Facebook site for friends or whatever. Isn't there a distinction to be drawn between these two? I think there used to be more of a distinction than I'm used to previously in time in the early days of the Internet. I think that distinction has grown less and less meaningful. It's one of the reasons I quoted such lengthy passages from Packingham in the opening brief. Of course, Packingham, the other thing is Packingham's concerns are these are restrictions forever. I'm sorry, Your Honor? These are restrictions forever. That's true in North Carolina. That law continued. Which is, you know, when we say there wasn't dealing with someone on probation or for a finite term, you are correct, I think, that the Supreme Court has expressed concern about how broad this is and how restrictive. But it seems to me that it's entirely possible between, on the one hand, this is a forever prohibition. On the other hand, it's for two years. The court might view that in different ways. Might it not? Which is, as the State argues, that's one of the reasons that perhaps Packingham shouldn't be followed or viewed as a definitive statement here. I think it's true that Packingham specifically says we're not reaching people who are still under the continuing jurisdiction of the justice system. So it is an open question whether it should be extended. And I think it's also true that there is a timing distinction, that probation is temporary. I would note it was four years in this case. It's 48 months probation. You are correct. But it's the same principle applies. There is an end date to probation, and at least in North Carolina, the sex offender registry is for life. So that is different. But I guess I'd go back to the twin purposes of probation. One of them is rehabilitation. And that's, to me, what the language of Packingham brings so strongly, because it's not just about talking to your friends on the Internet. They talk about the different, I think, one of the important points is what is a social networking website? Both the law in Packingham and the probation condition, the definition of social networking websites here is laughably broad. Anything that had a comments section, if you read a news website and there's a comments section below it where you can comment on the article, that's probably a social networking website under the definition. But what we've done in this case to parallel Packingham is just define it in what social networking websites, what the term means, to say even if it could be much more broadly applied, it's enough to decide the case to say we're going to treat that as what it's commonly understood to be. Well, but the probation conditions, going back to the point I made earlier, draw a distinction between, on one hand, social networking websites and the Internet, and on the other hand, just normal Internet access other than that, apparently. And the social networking website talks about prohibitions because people under these circumstances, we don't want their networking, but probation condition number eight begins drawing the distinction. Okay, Mr. Borger, if you want to get on the computer for any of the reasons discussed by the Supreme Court in Packingham, any of these legitimate reasons, tell this guy you're probationary on what is in your mind, you can get his approval to do so. Except not the social networking. Not the social, well, and arguably, what we're talking about is, if you can get, this might very well be broad enough to include that if there was some legitimate reason for it, because number eight says not access to use a computer or any other device with enough capability without prior approval from the probation officer. If somehow there was some claim about social networking on the computer that was really important and constructive and beneficial and rehabilitative, whatever, I think the probation officer would have the authority under that to permit this too, though it's a bit of a stretch on what grounds would that be. But all the things you mentioned about education and civic involvement and all that, that's still available, isn't it? I think there are other websites you can visit that allow you to read information and possibly speak, but the really core part of Packingham is discussing what are these social networking websites? What does that mean? And giving some examples of how important they are today. Facebook, people, more people get their news on Facebook now than from other sources in the United States. That's an insane statistic to me. Yeah, it's not one that I think we can all approve of, but there it is. Right, and especially young people like Mr. Morgard in his 20s. LinkedIn is an employment social networking website. You use it to network for a job that you want and to try to obtain employment. Most people apply for jobs by sending a resume through email now, which is not allowed to Mr. Morgard. Well, that's it. Stop it right there. If he wishes to engage in personal email correspondence with X, Y, and Z, which would be computer related, doesn't these conditions explicitly permit the probation officer to let him do so as long as he's told about it in advance? It does. Number 8 does. Again, that's the distinction between 5 and 8. You put the whole social networking, and to say that most people get the news from Facebook, the response might be, well, so what? If you can't otherwise access the blogosphere or pick up news sites through the Internet with advanced permission, that should be good enough. I think that's a practical distinction. That's a practical concern. Certainly I and anyone in this room could survive as a human being without access to the Internet. But that's not what we're talking about here. We're talking about what is the government allowed to ban its citizens from doing under the First Amendment. You keep saying ban. It's just a temporary restriction as a condition of a probationary sentence. It's not a ban. Well, I take tomato tomato on that, Your Honor. That was significant to Packingham, wasn't it? The fact that this was an absolute ban, lifetime ban, registered sex offenders. That's a ban. This is just a temporary restriction. I think a temporary restriction is a ban that is limited in time, Your Honor. So I agree that there is a distinction there, a temporal distinction, that one is limited in time, one continues. And you don't think that was significant to Packingham? I think it added to the strength of the issue there. This court recently held, in Ray Dustin W., dealing with a constitutional challenge to a geographic limitation on a probationer where he was barred from going on the campus of the University of Illinois. And the challenge in that case was that this was constitutionally overbroad. In rejecting that challenge, this is what we wrote. The reason I'm calling it to your attention is because I want your thoughts on why it doesn't apply equally here. This was just six months ago, as I recall. The condition is narrowly drawn because it contains exemptions for legitimate access to the university campus and does not categorically ban respondent. The ban does not apply when either one, respondent is in the presence of his parent, guardian, or custodian, or two, this is the more important one, respondent has received advance permission from his probation office. Those two exceptions distinguish the present case from the Supreme Court decision in J.W. where the prohibition on the defendant's travel was absolute. So, it seems to me that your constitutional arguments, without the possible permission of the probation officer, would be a lot stronger and would be more consistent with Beckingham, but for another way, why doesn't Dustin W. apply here and if we were to agree with your arguments, would we have to essentially overrule what we just wrote six months ago in Dustin W.? I don't think this court would have to go so far. There's a few things I want to unpack from that. First off, my memory of Dustin W. is that it was a court's discretionary condition as opposed to a statutory condition. So, it's still a constitutional argument, but I've tried to organize the arguments in such a way, because it's a different standard that applies each time. And so, I think that would be a good time to pivot to the second set of discretionary conditions. But before I do that, I think there's a few key issues there. The issue in Dustin W. was geographic restriction, and there's sort of a set of law on that that I've tried to use as an analogy to the First Amendment law, which is essentially what your Honor just said. There has to be an exception. There has to be a way to access the U of I campus with the probation officer's approval. We don't have that in Condition No. 5 here, the temporary restriction, as Justice DeArmond referred to it, on access of social networking websites. And I would disagree with your Honor's assertion earlier that the probation officer could overrule the language of Condition 5 based on the rule of Condition 8, because there's a number of overlapping conditions here that those prohibitions all apply, and you have to navigate the maze of those prohibitions. For No. 11, the ban on having any contact whatsoever with anyone under the age of 18, there's two other sort of Russian nesting dolls of conditions that do essentially the same thing but are less onerous. No. 7 has a knowing requirement and an exception for family members, and No. 10 has just the knowing requirement but no family member exception, and then No. 11 has no knowing requirement, so you violate it any time you have any contact whatsoever. But that one allows you to ask your probation officer and the treatment department for advanced permissions. If your client makes a request to a probation officer and the officer unreasonably denies that request, does your client have a remedy for such a situation? I think that dispute could be brought before the trial court, that you could file a request for the court to weigh in with its continuing jurisdiction over probation. So there would be a way to address that. I would ask that this court clarify the scope of these conditions now on appeal to make that type of relief not necessary, because especially with the First Amendment issues, and I was kind of going to this with the Dustin W. answer, the First Amendment is different. It's the only one we allow for an over-breath challenge because of the chilling effects, not only on my speech but on everyone else's speech. So that's the problem with waiting to the back end to fix this in a hearing on an unreasonable application of discretion, is that in the meantime it's chilling speech, and that's something that we say is not allowed. So we've got Condition No. 11 on the discretionary conditions. That's the ban on any contact with anyone under the age of 18. That's a quarter of the population in Illinois. There's no way to know in advance if you call for pizza or do any of the things that we do, go to the grocery store if you're going to bump into someone that's under the age of 18, and you've already violated that condition. There's also a speech component to this. If you did get permission from your probation officer to go on the Internet, you're banned from having any contact with an under-18-year-old on the Internet, and you wouldn't know in advance if that was going to happen. Thank you, Mr. Kimmel. You have an opportunity to address this again in rebuttal. Mr. Zimmerman. May it please the Court, Counsel. Good afternoon, Your Honors. My name is John Zimmerman from the Fourth District Appellate Prosecutor's Office. Although Counsel didn't address the first issue regarding the trial court's continuing jurisdiction, the probation, and the Castleberry and Daly arguments, Counsel did actually just admit that the trial court did have continual jurisdiction in probation. For those reasons, and the reasons set forth in the brief, the State's position is that the trial court's imposition of these additional probation conditions on remand was, in fact, proper. Now in regards to the specific probation conditions, the first one is the social media sites, as Your Honors and Counsel were discussing. Although there is not an exception for this one, as we set forth in our brief, Packingham does not apply to probationers. In that case, it was for the rest of that person's life as a sex offender. Here, probationers, as Your Honors discussed, was for a set period of time. And simply because the condition of probation impinges on a fundamental constitutional right does not automatically deem the condition invalid. The State requests this court to not apply Packingham to this probationary condition, as it was a reasonable restriction. One of the fears with social media, especially with certain parents, although I'm not one of those yet, is that social media allows these child sex offenders and sexual predators into the monitor's bedroom through direct messaging on Instagram or Facebook. So restricting sex offenders from social media websites is a reasonable condition in order to protect the public, and as well as to rehabilitate the defendant and to stop him from falling to repeat his past actions. Again, this was a statutory enacted probationary condition. This evidences the legislature's thought process that they thought about this. They thought this would be a good condition, and this court should not apply Packingham, as it's reasonable. And again, probationary conditions are just for a definite period of time, not a lifetime ban, as it was in Packingham. In regards to Conditions 6 and 8, the computer scrub software, the State fails to see how that in any way violates a defendant's First Amendment right. It's just not allowing him to put a software on his computer that would allow him to delete his potential improper acts that he's done on that computer. If anything, that is a very reasonable probation condition that clearly does not violate the First Amendment. In regards to the not accessing or using computer or other Internet-capable device without approval from probation officers, as well as other restrictions, as the State adopts your honors, arguments that you previously made with counsel that this does allow that exception, that he just needs to have prior approval from his probation officer, so it's not just a flat, all-out ban on his rights. In regards to the due process argument that counsel made, again, these conditions were reasonable. They protected the public. They assisted in his rehabilitation from not having him repeat these past acts and attempting to possibly prey on other minors. Defendants cited several cases for support in his brief. The State distinguished those, and again, they were all federal persuasive authority and not precedent of this Court. Accordingly, these were reasonable probationary conditions, and this Court should affirm. In regard to Probation Condition 11, this is no contact with anyone under 18. The State posits that this was a reasonable condition. Again, defendant can receive authority from his probation officer if he wants to contact someone under 18. As he did sexually abuse someone who was a minor, this is, again, reasonable in that it protects the public and helps his rehabilitation. And I know we did not discuss the last two non-statutory probation conditions. These are reviewed for an abuse of discretion. It was pornography, no pornography, and not living in the same mobile home park as another convicted sex offender. Again, the State contends these are reasonable. He was a child sex offender. Obviously, he should not have access to material designed to arouse sexual excitement. The State does acknowledge counsel's argument as to what is pornography. The State does somewhat address that in more detail in its brief. The State's position is that the trial court did not abuse discretion in imposing these two probation conditions, and requests this Court to affirm. If there's no further questions? See none. Thank you. Thank you, Your Honor. Mr. Kimmel, any rebuttals, sir? May it please the Court. I want to start on the point that the prior approval of the probation officer is enough, and I think that's a thread that runs through a number of these conditions, both the discretionary conditions and also the statutory conditions. One of the points we were talking about is whether the First Amendment is different than other areas of constitutional law because of this chilling effect. It may be enough in Dustin W. in geographic cases to have blanket discretion, to have an escape hatch that the probation officer can allow you to go to the University of Illinois without providing guidelines to the probation officer on how to exercise that discretion. That may be sufficient in other areas of law. But in the First Amendment area of the law, we have to deal with the chilling effect on speech that over-broad government regulations creates. That's problematic for the First Amendment when it's not in other areas of the law. So is this an argument that, how did you put it, guidance-free discretion given to the probation officer is not adequate? It's problematic. It's not even that there's no guidance. The Court removed guidance that existed in the statute in Probation Condition Number 8. There was additional guidance provided statutorily, but the Court removed to provide even less guidance to that probation officer. We don't want probation officers determining what's constitutional or not for purposes of First Amendment speech. But we give probation officers vast discretion in so many other contexts. Deciding how to deal with probationers who are subject to all kinds of rules and conditions that people not convicted of crime and put on probation would never be subject to. I don't know that there's ever been a distinction drawn between all kinds of other things that are, you'd have constitutional claim. After all, there is a, indeed, in Dustin W., there was a constitutional right to travel that was argued. I can't remember. I think since it's not explicit in the Constitution, it may have been derived from the First Amendment itself, like speech. Wasn't it? I think it's one of those rights that packages a variety of other rights. So it's a derivation. I just think that the First Amendment carries its own baggage. We give rights under the First Amendment that are not found elsewhere in the Constitution. So it's actually problematic. I cited the Doe case. Let's assume you were sympathetic to this argument and now you were Senator Kimmel and you were wanting to figure out the need to address the constitutional concerns by providing specific legislative guidance. What would you say? I think creating exceptions to the social media ban would be a start. To the probation officer, what would the statute say in probation on how to decide on Internet use? Certainly the employment suggestion that was in the statute that was removed should be put back in. I'd say anything to do with religion, going to church online. There's sort of a laundry list. Basically, you could copy parts of Packingham, I think, and put them directly in. Specifically employment. Talking to government officials. All of our government officials use Twitter now and you cannot engage civically with your representative, your senator, your president, unless you can use Twitter, which Conrad Morger cannot do. I'd like to briefly touch on the other two discretionary conditions that I did not get to in the opening. Condition number 14 is not just a ban on pornography as the state has characterized it. It uses the word pornography, but the language is so broad that it bans viewing or possessing any material depicting or describing persons in a state of undress. Under this condition, if it's taken literally, Conrad can't go to a museum. He can't see a naked person in a statute or a painting. He can't go see a popular movie, a steamy R-rated thriller. It's not pornography, but it certainly has naked people in it. He can't read a novel, look at a billboard, a perfume ad. It goes too far. This is about chilling speech. It's about if you're the probationer, what are you allowed to do? A sane person reading these things would stay in their house, not go outside, and not speak to anyone. And that's not a way to rehabilitate you on probation. And just last, number four, condition number four, it takes a mandatory ban on living in a condo or apartment complex that contains another sex offender and adds an additional sentence. It also bans you from living in a mobile home park in McLean County that has an additional sex offender living in it. It tells you whether or not the mobile homes have separate street addresses. Doesn't he have to know about it? I guess he'd have to go online and look. I don't believe there's a knowing. I thought there was a knowingly requirement regarding residence. My memory is that it does not, but that may be incorrect. Well, good times up, counsel. You're correct, Your Honor. It's no or reasonably no. Thank you for your arguments. We'll make this matter of the advisory to be recessed until tomorrow.